# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WILLIE ALLEN, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:06-cv-3075-RWS |
| SUNTRUST BANK, | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION AND SUPPORTING BRIEF FOR A TRO AND PRELIMINARY INJUNCTION

Plaintiffs move this Court for a temporary restraining order and preliminary injunction to stop defendant SunTrust from (i) requiring the plaintiffs and all still-employed opt-in class members (collectively, the "Plaintiff Class Members")—now being RIF'd into a very weak job market—to dismiss their pending overtime claims as a condition to receiving the severance guaranteed in SunTrust's Employee Handbook and thus a part of their employment contract, and (ii) communicating directly with the Plaintiff Class Members about the dismissal of their collective-action overtime claims.

SunTrust's conduct is unlawful and causing immediate irreparable harm in at least three ways.

First, SunTrust is both discriminating and retaliating against the Plaintiff Class Members by fashioning a Hobson's choice that conditions compliance with its preexisting contractual duty to pay severance on the dismissal of the ***pending*** overtime claims, in violation of 29 U.S.C. § 215(a)(3).[1] The discrimination is proven because employees with ***unfiled*** overtime claims face no risk of having their severance pay held hostage at this point, even if severance were not mandatory.  Retaliation is proven because SunTrust refuses to pay contractually required severance unless the Plaintiff Class Members dismiss their pending overtime claims.

Second, SunTrust not only is using its Hobson's choice to force a settlement of the pending overtime claims for ***$0.00*** beyond the severance already owed under its pre-existing severance policy.  But SunTrust is doing so in derogation of this Court's authority to control the flow of ***accurate*** information about the Plaintiff Class Members' FLSA rights.  And—given that this case is a collective action—SunTrust is thus subverting this Court's control by trying to settle class-wide claims outside the proper channels of attorney-to-attorney communication and final approval by the Court.

---

[1]  In light of SunTrust's conduct, plaintiff has also moved to file his Second Amended Complaint to add a discrimination/retaliation claim under 29 U.S.C. § 215(a)(3) and request injunctive relief.  *See* Doc. 130.

Third, SunTrust is executing its settlement/dismissal scheme *ex parte* with the Plaintiff Class Members.  Despite that this is a collective action, SunTrust by dealing directly with the Plaintiff Class Members and excluding class counsel to settle the pending claims.

At bottom, SunTrust is coupling exploitation of economic fear with a Hobson's choice between severance and unpaid overtime to leverage the dismissal of the pending claims for nothing more than what SunTrust already owes under its severance policy.  As argued below, a TRO is required.

## I. *SPECIFIC RELIEF REQUESTED*

SunTrust's severance scheme clearly discriminates and retaliates against the Plaintiff Class Members in violation of § 215(a)(3) and is materially interfering with the Court's authority and the lawful administration of this collective action.  The scheme's continued execution has caused and will continue to cause an immediate and future economic and informational injury to the Plaintiff Class Members both in the severance process and in this lawsuit.  In any event, because SunTrust's scheme violates §215(a)(3), irreparable harm is presumed.  The Court should thus enter a temporary restraining order and preliminary injunction that:

(1)   Requires SunTrust to withdraw all Severance Agreements already issued to Plaintiff Class Members, amend its Severance Agreements not yet issued, and reissue and use a revised Severance Agreement

expressly exempting pending overtime claims from any release provision—in a form to be approved by the Court.

(2)     Requires SunTrust to issue a written statement to all Plaintiff Class Members, to be attached before the first page of the Severance Agreement, that no employee is required to dismiss or otherwise withdraw any overtime claim filed or in which such employee is participating pursuant to The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*—in a form to be approved by the Court.

(3)     Requires SunTrust to issue a statement to all employees eligible for severance that, "The general release in paragraph 4 of the severance agreement provided to you does not apply in any way to your right to past unpaid overtime pay, including liquidated damages, costs, and attorneys' fees associated with such claims, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*"

(4)     Requires SunTrust to issue a statement to all employees eligible for severance that, "Any agreement to arbitrate unpaid overtime claims, as specified in the attached Arbitration Agreement, is not necessarily binding or valid as to such claims.

(5)     Prohibits SunTrust from communicating with Plaintiff Class Members concerning any matters related to this litigation, including the release, dismissal, or withdrawal of any claims or participation in this case, without prior approval of the Court.

(6)     Grants such other relief as the Court may deem proper and just.

## II. *SUMMARY OF THE ARGUMENT*

**(1) Discrimination/Retaliation.** SunTrust's proviso conditioning its payment of severance on the Plaintiff Class Members' dismissal of their pending overtime claims violates the FLSA's anti-discriminating/anti-retaliation provision by constructing a Hobson's choice not faced by any other SunTrust employees.  The FLSA expressly bars employers from

discriminating or retaliating against any person because they filed an overtime claim.  *See* 29 U.S.C. § 215(a)(3).

*(a) **Discrimination**.*  SunTrust is forcing the Plaintiff Class Members—*but not **potential** FLSA claimants*—to choose between, on the one hand, receiving the severance SunTrust guaranteed in its Handbook and, on the other hand, pursuing their claims for substantial unpaid back overtime.

The Hobson's choice contrived by SunTrust violates § 215(a)(3) because all severance-eligible employees at SunTrust with ***still unfiled*** FLSA claims retain the ***unconditional*** right—under 11th Circuit authority—***both*** to receive their severance ***and*** also to prosecute their overtime claims in the future.  In the 11th Circuit, no person can release their FLSA claim without the express approval of this Court or the U.S. Department of Labor, unlike Title VII, ADEA, or ERISA claims, for example—but neither Court- nor DOL-preapproval is a part of SunTrust's RIF process.

SunTrust's scheme here is to avoid paying as much back overtime to as many Plaintiff Class Members as possible by exploiting the economic fear that comes with imminent unemployment in a weak job market.  So SunTrust is misleading them to believe they must choose between a *sure thing* in the form of severance or the mere possibility of collecting unpaid

back overtime.  They cannot have both—even though that is what the FLSA guarantees.  But the employees with ***unfiled*** overtime claims can have both.

*(b) __Retaliation__*.  Equally important, SunTrust is retaliating against the Plaintiff Class Members because of their FLSA claims.  Long before this case was filed, SunTrust agreed in its Handbook to pay severance to all involuntarily discharged employees—like the Plaintiff Class Members.  As a result, because SunTrust promised all employees *additional* compensation if RIF'd, that policy became a part of their employment contract.

Now, however, SunTrust holds hostage the Plaintiff Class Members' pre-existing contractual right to severance until they dismiss their pending overtime claims.  SunTrust is thus trying leverage a cut-rate settlement in this case.  That is retaliation under § 215(a)(3).

**(2) __FLSA's Fairness Test.__**  Next, SunTrust is executing its severance scheme in avoidance of (a) the FLSA's mandatory "fairness" test applicable to the settlement of pending overtime claims, and (b) the Court's inherent authority to supervise the parties' communications in a collective action.

Given its long-standing—and contractually binding—severance policy, SunTrust is offering ***$0.00*** to settle each pending overtime claims.  That is because SunTrust is contractually bound to pay each Plaintiff Class Member

severance under Georgia law.  SunTrust's scheme does not satisfy the FLSA's fairness test for approving the settlement of litigated overtime claims.

Compounding the fairness problem is that SunTrust has executed its severance scheme in a manner calculated to obtain an unlawful litigation advantage.  That is, the elimination of as many pending overtime claims as possible outside the lawful and proper framework for voluntarily resolving an FLSA collective action—or any other form of class action.

SunTrust is discussing directly with each Plaintiff Class Member the final disposition of his or her overtime claim.  SunTrust, however, should be communicating solely with class counsel on a topic as central and substantial to this case as settlement and dismissal.

Also, SunTrust's *ex parte* face-to-face meetings with the Plaintiff Class Members have bred confusion and disinformation—perhaps as intended by both SunTrust and its outside counsel.  The prophylactic protections of class-wide representation are designed to prevent precisely this situation.

**(3) Unauthorized Class Contacts.**  Finally, SunTrust invited none of plaintiffs' counsel to its *ex parte* meetings with the Plaintiff Class Members about settling their claims.  Because these meetings interfere with this Court's control over the process and flow of *accurate* information in this case, the meetings should be stopped.

### III.  *FACTUAL BACKGROUND*

#### A. Plaintiffs File a Collective Overtime Action Against SunTrust

On December 19, 2006, plaintiff Willie Allen filed this collective action

seeking unpaid back overtime calculated using the FLSA's standard method

for the three-year period dating back to December 2003, plus liquidated

damages.  Doc. 1.  This Court ordered the plaintiffs to serve a notice upon all

potential class-members, including SunTrust's current CTS employees, which

the plaintiffs did.  Docs. 44, 51, 68.

More than 40 current and former CTS employees joined the collective

action.  Doc. 46, 49, 50. 54, 56, 57, 59-67, 69, 75-76, 80.  A total of 26 of the

opt-in class members still work at SunTrust as CTS employees.  Ex. 1 ¶ 5.

#### B. SunTrust's Severance Policy in Its Employee Handbook Conditions Payment on a Waiver of the Right *to File* Claims

SunTrust's severance policy in its Employee Handbook—available to all

employees on SunTrust's intranet website—requires SunTrust to pay

severance to all involuntarily terminated employees.  Ex. 2 at 2; Ex. 3 at 3.

SunTrust's severance policy also sets forth a formula for calculating the

additional compensation promised to eligible employees guaranteeing them

two weeks' base salary for each year of service.  Ex. 2 at 2; Ex. 3 at 2

In return, the employees are obliged to sign a release waiving their right to file future claims against SunTrust.  Ex. 2 at 2; Ex. 3 at 3.

SunTrust's Severance Policy reads in relevant part:

> **Severance and Release Agreement**
> The payment of severance . . . is conditioned and contingent upon your signing a release ***waiving your right to file*** any claims against SunTrust . . . relating to your employment or termination, and other terms and conditions outlined in the SunTrust Release provided to you at the time of your notification . . . .

Ex. 2 at 2; Ex. 3 at 3 (emphasis added).

### C. SunTrust Announces a RIF and Initiates *Ex Parte* Meetings with the Plaintiff Class Members to Offer Severance Conditioned on the Dismissal of Their *Pending* Overtime Claims

SunTrust recently announced a reduction in force.  Ex. 4 ¶¶ 3-5; Ex. 5 ¶¶ 4-5; Ex. 10 ¶¶ 4-5, App. A (listing number of jobs eliminated); Ex. 11 ¶¶ 3. The RIF covers all CTS employees—including the Plaintiff Class Members.

Starting on or about April 21, 2008, as part of its RIF process, SunTrust began holding individual *ex parte* meetings with each targeted Plaintiff Class Member.  Ex. 4 ¶¶ 3-5; Ex. 5 ¶¶ 4-5; Ex. 10 ¶¶ 4-5.  During its *ex parte* meetings, SunTrust presented each Plaintiff Class Member with a standard document entitled, "Severance Benefits Agreement, Waiver and

Release" (the "Severance Agreement").[2]  Ex. 4 ¶ 6; Ex. 5 ¶ 6; Ex. 10 ¶ 6; Ex. 11 ¶ 4.  The only difference among each agreement is the amount of severance offered based on the formula in the SunTrust Handbook.

Contrary to SunTrust's written severance policy, however, the Severance Agreement conditions the payment of severance not just on a Plaintiff Class Member's waiver of the right to file future claims.  Instead, SunTrust also demands that the Plaintiff Class Members release and dismiss with prejudice their ***now-pending*** overtime claims—a condition nowhere required in the SunTrust Handbook.  *See* Ex. 4, Severance Agreement ("Agreement") ¶ 4; Ex. 5, Agreement ¶ 4; Ex. 10, Agreement ¶ 4; Ex. 11, Agreement ¶ 4.

The Severance Agreement states:

> If I have already filed any Claim referred to in this paragraph, I agree to withdraw it prior to the date I receive my Severance Pay and never to refile it.  I understand that I am waiving and releasing all these Claims on a knowing and voluntary basis . . . .

*Id.*

In other words—as SunTrust made clear to plaintiff Willie Allen during his April 21st *ex parte* meeting—each Plaintiff Class Member must choose between (a) receiving the severance SunTrust has promised as a condition of

---

[2]  SunTrust's counsel has represented that all RIF employees eligible for severance have or will receive the standard Severance Agreement.  Ex. 6.

their employment, or (b) continuing to prosecute his pending FLSA claim in an effort to recover substantial unpaid back overtime.  Ex. 4, Agreement ¶ 4. But he cannot have both.  *Id*.

The Severance Agreement also purports to require the arbitration of all disputes that arise after payment of the severance moneys.  Ex. 4, Agreement ¶ 6(a) & pg 5.  But SunTrust makes no effort to limit a RIF'd employee's total exposure should he assert a claim subject to arbitration.  SunTrust fails to limit an employee's costs to, for example, the $350 filing fee for a claim in federal court.

Furthermore, the mere filing of an arbitration claim exposes a claimant to bearing the full costs of litigation for both sides—regardless of subject matter—contrary to the "American Rule" and numerous statutory provisions that only a prevailing plaintiff can recover attorney's fees.  The result of this cost-shift, coupled with the lost collective-action efficiencies and—most important—the ***economic vulnerability*** of the RIF'd employees will substantially discourage the pursuit of absolutely valid overtime claims.  Ex. 4, Agreement ¶ 6(a).

## D. <u>SunTrust Faces Other Potential Overtime Claims</u>

This action against SunTrust is the only pending ***certified*** collective action with opt-in members.  SunTrust, however, faces substantial additional ***potential*** overtime claims involving CTS employees.

Two other FLSA overtime cases have recently been filed against SunTrust in the Northern District of Georgia and are now pending before this Court.  *See Zimmerman v. SunTrust Bank*, 1:08-cv-1410-RWS (filed 4/14/08); *Riddle v. SunTrust Bank*, 1:08-cv-1411-RWS (filed 4/14/08).  Both plaintiffs are CTS employees—one a CTS-3 and the other a CTS-4.  As with this case, both of the newly filed complaints were filed as FLSA collective actions.

## E. SunTrust Holds *Ex Parte* Meetings with the Plaintiff <br> <u>Class Members and Makes a Settlement Offer</u>

Prior to starting face-to-face meetings with the Plaintiff Class Members, SunTrust chose not to advise Plaintiffs' class counsel about the meetings' dates and times or to invite them to attend in person or by phone. Ex. 7 ¶ 2.  Nor did SunTrust advise Plaintiffs' counsel that the defendant would be communicating with the Plaintiff Class Members about their rights in this litigation.  Ex. 7 ¶ 3.  Nor did SunTrust advise the Plaintiff Class Members that they could have their attorneys present.  Ex. 4 ¶ 10-11; Ex. 5 ¶¶ 12-13; Ex. 10 ¶¶ 10-11; Ex. 11 ¶ 8.

However, well before April 21st, Plaintiff class counsel advised SunTrust it would be unlawful to condition its severance payments on the release and dismissal of a Plaintiff Class Member's claim based on the 11th Circuit rule that FLSA overtime claims cannot be released absent supervision by this Court or the U.S. Department of Labor.  Ex. 8.  Plaintiff counsel also proposed a resolution of that would have mooted the necessity of this motion.  *Id*.

Plaintiff class counsel's letter explained that its purpose was to ensure the Plaintiff Class Members would receive severance benefits consistent with those offered to non-class members in accord with SunTrust's policy.  *Id*. Plaintiffs' counsel stated that that exclusion of the pending FLSA claims from any severance release would ensure compliance with the law and also avoid any confusion or miscommunication between the Plaintiff Class Members and SunTrust during its reduction-in-work-force and associated severance process.  *Id*.

On April 8, 2008, SunTrust's outside counsel responded.  They rejected the suggestions of Plaintiffs' class counsel across the board.  Ex. 9.

## IV.  *LEGAL ARGUMENT*

## A.  Introduction

The Court should grant immediate injunctive relief to protect the Plaintiff Class Members from being ensnared in a trap from which there

appears to be no meaningful means of escape.  SunTrust should be ordered to carve-out the pending claims from its Severance Offer and halt its *ex parte* meetings with the Plaintiff Class Members.

SunTrust's scheme to secure the dismissal of as many of the Plaintiff Class Members' pending overtime claims as possible is predicated on a direct violation of the FLSA's anti-discrimination/anti-retaliation provision.  29 U.S.C. § 215(a)(3).  SunTrust is holding hostage the Plaintiff Class Members' pre-existing right to severance as a means to force them to forfeit their right to collect back overtime in this case.  No other class of SunTrust employees is being force to surrender their right to unpaid overtime as a condition to receiving severance—nor could they under 11th Circuit law.

Moreover, SunTrust is using its unlawful severance scheme to secure an improper advantage in the resolution of the pending claims at cut-rate prices by circumventing this Court's supervision of the collective-action process and also plaintiff class counsel.  SunTrust is pressuring the Plaintiff Class Members to surrender their right to unpaid back overtime for $0.00 in order to collect the severance already owed them—and, furthermore, improperly dissuading the prosecution of valid overtime claims through the exploitation of economic fear.

SunTrust's severance offer is patently unfair and unapprovable under the FSLA.  This Court's duty to approve any release and dismissal, as well as

to control the flow of **accurate** and **non-coercive** information between the parties is thus being subverted.

## B. An Application for Temporary Injunctive Relief for Violations of the FLSA's Anti-Discrimination/Anti-Retaliation Statute Does Not Require Proof of Irreparable Injury and Public Interest Factors

The FLSA grants employees the right to injunctive relief to redress violations of § 215(a)(3). *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002). That section bars employer from retaliating or discriminating against overtime claimants. *Id.* at 1335 n. 2.

Generally, the movant must establish four factors to obtain preliminary injunctive relief: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) entry of the relief would serve the public interest. *Siebert v. Allen*, 506 F.3d 1047, 1049 (11th Cir. 2007).

The Eleventh Circuit, however, holds that if the violation of an employment statute is the basis for an employee's injunction application, and the statute authorizes injunctive relief, the movant is not required to prove the injury and public interest factors, as they are presumed by the statute's violation. *United States v. Hayes Int'l Corp.,* 415 F.2d 1038, 1045 (5th Cir. 1969). The former Fifth Circuit explained:

- 15 -

> Where, as here, the statutory rights of employees are involved
> and an injunction is authorized by statute and the statutory
> conditions are satisfied as in the facts presented here [showing a
> violation], the usual prerequisite of irreparable injury need not be
> established . . . .  We take the position that in such a case,
> irreparable injury should be presumed from the very fact that the
> statute has been violated.

*Id.*

## C. SunTrust's Severance Scheme Unlawfully Discriminates and Retaliates Against the Plaintiff Class Members

The FLSA's anti-discrimination/anti-retaliation provision states:

> It shall be unlawful for any person . . . to . . . in any other
> manner discriminate against any employee because such
> employee has filed any complaint or instituted or caused to be
> instituted any proceeding under or related to this chapter."

29 U.S.C. § 215(a)(3).

The Supreme Court requires § 215(a)(3) to be read broadly.  *Mitchell v.*

*Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960).  A broad construction

ensures that an employer cannot create an atmosphere of intimidation. and

"prevent[s] employees' attempts to secure their rights under the Act from

taking on the character of 'a calculated risk.'"  *Id.*

A § 215(a)(3) claim has three elements:  (1) the claimant engaged in

activity protected under the FLSA; (2) the claimant subsequently suffered

adverse action by the employer; and (3) a causal connection exists between

the employee's activity and the employer's adverse action.  *See Wolf v. Coca-*

*Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).  To prove a causal relation, the claimant must show that she would not have suffered the adverse action "but for her assertion of FLSA rights."  *Id.* at 1343.

A plaintiff can prove retaliation by presenting evidence that supports his claim either directly or indirectly.  Under the direct method, the plaintiff presents evidence of statutorily-protected activity, an adverse employment action, and a causal connection between the two.  *Id.*; *Lang v. Illinois Dep't of Children and Family Servs.,* 361 F.3d 416, 418-19 (7th Cir. 2004) (citation omitted).  Under the indirect method, the employee offers evidence that he engaged in protected activity, performed his job to his employer's legitimate expectations, suffered adverse action, and was treated less favorably than similarly-situated workers who did not engage in such activity. *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002).

## 1. *Discrimination*

Here, SunTrust's severance offer requiring the Plaintiff Class Members to dismiss their overtime claims unlawfully discriminates against them because they are being "treated less favorably than similarly-situated workers who did not engage in such activity."  *Id.*  Unlike the Plaintiff Class Members, RIF'd employees with ***potential*** FLSA overtime claim not only will receive severance from SunTrust, but they simultaneously retain the legal

right under 11th Circuit law to file overtime claims against SunTrust in the future, regardless of any release they sign.

The Eleventh Circuit ruled in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), that there are only two ways an employee can be held to have released his right to unpaid back overtime, other than letting the statute of limitations to run. *Id.* at 1353. First, the DOL can supervise payment to the employee of unpaid back wages owed—which has ***not*** happened here. *Id.* The second way to settle an overtime claim is with the presiding Court's approval in a pending FLSA case after a fairness hearing— ***which SunTrust is trying to circumvent***. *Id.*

> When employees bring a private action for back wages under FLSA, present to the district court a proposed settlement, the district court may enter a stipulated judgment ***after scrutinizing the settlement for fairness***.

*Id.* Thus, *Lynn's Food Stores* holds that private—but unapproved— agreements releasing or settling FLSA rights are void *ab initio*. *See id.* It does matter how they are written or in what forum they are litigated. *Id.* ("an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA").

Here, SunTrust's discrimination violates § 215(a)(3) because, regardless of what the Severance Agreement purports to require, RIF'd employees with

*potential* FLSA claims not only are guaranteed to receive their severance.
They are guaranteed under *Lynn's Food Stores* to retain the **unconditional**
right to pursue unpaid back overtime in the future. *Id.*

But SunTrust is adversely treating the Plaintiff Class Members' right
to severance, as compared to the other RIF'd employees, by withholding their
moneys until they first release and dismiss their pending FLSA claims—*i.e.*,
SunTrust's actions are directly tied to the pending claims. *See Brennan v.
Maxey's Yamaha, Inc.*, 513 F.2d 179, 181 (8th Cir. 1975) (holding that when
the immediate cause or motivating factor of a an employer's adverse action is
the employee's assertion of statutory rights, the employer's conduct is
discriminatory under § 215(a)(3)).

Furthermore, to dissuade the Plaintiff Class Members from taking any
future steps to re-initiate their pending claims, SunTrust is leveraging the
economic fear that comes with unemployment and compounding that fear-
effect by imposing arbitration on the employees.  Doing so thus exposes them
potentially to substantially higher filing fees and paying SunTrust's own
legal fees.

SunTrust's scheme thus has imbued the Plaintiff Class Members'
"attempts to secure their rights under the Act . . . [with] the character of 'a
calculated risk.'" *Mitchell,* 361 U.S. at 292.  That runs completely counter to

§ 215(a)(3).  *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008)

(holding that an employer retaliates against an employee by engaging in an

action that would have been materially adverse to a reasonable employee

because the employer's actions could well dissuade a reasonable worker from

pursuing his claim).  SunTrust is violating § 215(a)(3).

## 2. *Retaliation*

SunTrust's refusal to pay its contractually required severance to the

Plaintiff Class Members constitutes unlawful retaliation under § 215(a)(3).

SunTrust is clearly penalizing those employees who refuse to dismiss their

pending overtime claims by withholding their severance.

Under § 215(a)(3), an employer cannot withhold pre-existing

employment benefits because of an employee filed or instituted a claim under

the FLSA.  "Clearly, if [an employer] stopped providing [the employee]

benefits to which he was otherwise entitled simply because he filed a charge,

the company would be guilty of retaliation." *EEOC v. Cosmair, Inc., L'Oreal

Hair Care Div.*, 821 F.2d 1085, 1089 (5th Cir. 1987); s*ee Paquin v. Fed. Nat'l

Mortgage Ass'n,* 935 F. Supp. 26, 36 (D.D.C.1996), *rev'd in part on other

grounds,* 119 F.3d 23 (D.C. Cir. 1997) (holding in an ADEA case that "[i]f

severance pay is contractually required, it cannot be applied unequally).

But SunTrust is attempting to do precisely what the FLSA's anti-retaliation clause prohibits. SunTrust has constructed a scheme to avoid its pre-existing duty to pay severance to the Plaintiff Class Members pursuant to its severance-compensation policy in its Handbook based solely on the pending overtime claims—or, more to the point, the Plaintiff Class Members' pursuit of those claims. That constitutes retaliation against the Plaintiff Class Members in violation of § 215(a)(3).

Under Georgia law, a policy in an employer's policy manual promising additional compensation becomes a part of an employee's employment contract. In *Popovich v. Bekaert Corp.*, 222 Ga.App. 395 (Ga.App. 1996), this exact issue was before the court. *Popovich* held that the defendant's severance policy in its employee handbook formed a part of the plaintiff's employment contract because "an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan." *Id*. at 395-96 (quotation omitted).

Consequently, under Georgia law, SunTrust has a pre-existing duty to pay severance to the Plaintiff Class Members, so long as they waived their right to file claims ***post-payment***. That pre-existing duty constitutes not

only a part of the employees' employment contract, but—more importantly—

an employment benefit protected from retaliation under § 215(a)(3).

Thus, SunTrust's refusal to comply with its pre-existing obligation to

provide employment benefits because of the pending FLSA claims constitutes

unlawful retaliation.  *EEOC v. Bd. of Governors of State Colleges and Univs.,*

957 F.2d 424, 430 (7th Cir.) (holding that an employer unlawfully retaliated

against an employee by requiring the forfeiture of a benefit to which he was

already entitled, explaining that "[a] benefit that is part and parcel of the

employment relationship may not be doled out in a discriminatory fashion,

even if the employer would be free . . . . not to provide the benefit at all")

(quotation omitted), *cert. denied,* 506 U.S. 906 (1992); *compare EEOC v.*

*SunDance Rehabilitation Corp.*, 466 F.3d 490, 501 (6th Cir. 2006) (refusing to

hold that the defendant's severance proposal requiring the employees' release

of all employment claims retaliatory because the defendant's severance offer

was not a require part of the employment relationship").

### D. SunTrust's Severance Scheme Violates the FLSA's Fairness Test for Settlements, Undermines this Court's Control Over Communications with Class Members

1.

Central to SunTrust's scheme here is "settling" by way of dismissal as

many of the pending collective-action overtime claims as possible by

withholding the Plaintiff Class Members' severance pay and trying to force all future overtime litigation into arbitration.  And SunTrust is attempting to secure these dismissals for ***no additional money*** beyond the severance it already owes; doing so outside the Court's supervision of this case; and excluding plaintiff class counsel from the negotiation process.

In other words. SunTrust is trying to force a ***$0.00*** settlement of clearly valid collective-action overtime claims—both pending and available to potential opt-ins in the *Zimmerman* case—at the exclusion of the Court and class counsel.  SunTrust's scheme clearly violates the FLSA's fairness test for settlements and should be immediately halted.  *See Lynn's Food Stores,* 679 F.2d at 1353 (in a private FLSA overtime action, "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness").

### a.

Potential or filed FLSA claims—unlike, for example, potential claims under Title VII, the ADEA, or the common law—***cannot*** be waived or released without the Court's supervision or the DOL's approval.  *Id.* at 1355. *Compare Dorosiewicz v. Kayser-Roth Hosiery, Inc.*, 823 F.2d 546, at *1-2 (4th Cir. 1987) (table) (holding that, unlike FLSA rights, a severance agreements could be conditioned on waivers of ADEA and Title VII rights because those statutes permit private waivers).

Private agreements waiving FLSA claims are invalid. *Id.*; *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 946 (2nd Cir. 1959) (holding an employee's express release waiving FLSA claims invalid because it had not been approved in accordance with the FLSA). Thus, once filed—as in this case—an FLSA overtime claim cannot be settled unless the settlement is presented to the Court for a "fairness" review. *Silva v. Miller*, 07-22834-CIV, 2008 WL 1803769, *2 (S.D. Fla. April 7, 2008).

The test for "fairness" under the FLSA is comparable to a Rule 23 class-action settlement. *Silva v. Miller*, 07-22834-CIV, 2008 WL 1803769, *2 (S.D. Fla. April 7, 2008) (the fairness analysis of an FLSA settlement should rely on the factors a court "uses to review class action settlements"). The factors considered include the plaintiff's potential recovery and probability of success on the merits, the existence of fraud or collusion in the settlement, the case's complexity and expense, the likely duration of the litigation, and the stage of the proceedings and amount of discovery completed. *Id*.

The most important factor, however, in the FLSA's fairness analysis remains the plaintiff's possible recovery. *Id*.

> Ultimately, review of the FLSA settlement ensures that the plaintiff's recovery is a ***reasonable approximation of the wages she was not paid*** over the course of years within the statute of limitations, while accounting for other relevant considerations as the facts of a particular case require.

*Id.* (emphasis added).

b.

SunTrust's *$0.00* offers do not meet the FLSA's fairness test.

This Court has the duty to review any proposed settlements of the plaintiffs' FLSA claims under litigation here.  Defendant attempted to subvert that authority and prevent the Court's exercise of its duty by preparing a settlement arrangement that it discussed privately with the plaintiffs themselves.  The severance agreement may not act as a waiver of plaintiffs FLSA claims here because it did not conform to the requirement for Court review which are inherent in this litigation.

First, the pending (and future opt-in) overtime claims are substantial in value, so $0.00 is clearly deficient.  It bears reminding that SunTrust had already acknowledged its liability by paying a handful of CTS employees back overtime at the DOL's direction.

Nor can SunTrust point to its severance package as proof of valid consideration.  Under Georgia law, SunTrust already owes that money to its RIF'd employees.  Thus, SunTrust has not offered anything additional to compensate the Plaintiff Class Members, and potential opt-ins, for their overtime claims.

Second, the SunTrust's "settlement" offers are procedurally improper and clearly unfair.  By conditioning receipt of the contractually guaranteed severance on the settlement of valuable overtime claims, defendant is coercing plaintiffs during the time of impending financial distress and unemployment to forsake their right to unpaid back overtime for $0.00 for their overtime merely to collect what they are already owed.

Third, the so-called "settlement" is unfair in that the severance payments bear no relationship to the amount of overtime worked by each existing and potential claimant.  Severance payments are keyed to years of service, not the amount of overtime within the limitation period here.  But for an overtime settlement to be fair, it must be a reasonable approximation of the unpaid premium owed to the employee under the FLSA.  *Silva*, 2008 WL 1803769, at *2.

Fourth, it is easy to see that some class members and potential opt-ins might honor their "promise" to dismiss and forgo a potential FLSA recovery, SunTrust has created the legally misleading impression that, without a signed release, the employees' are jeopardizing their severance pay. SunTrust—by excluding the Court and class counsel from filtering this process—are exploiting the impression that a signed Severance Agreement waives all FLSA rights.

2.

It is the responsibility of the Court to safeguard the rights of class members in collective action. *See Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 171 (1989).  As *Sperling* noted, judicial oversight of the communications with opt-in class members protects against misleading communications that may influence the exercise of their rights.  *See id*.

Consequently, a defendant's solicitation of exclusions from a class action—or communications that effectuate the same result—constitute a serious challenge to the authority of the Court to maintain control over communications in the case.  *See* 3 *Newberg on Class Actions* § 15.19 (3d ed. 1992).  That is what SunTrust has done here.

Moreover, not only does an employer's improper filtering of information encourage opt-ins to dismiss their claims.  But it also discourages current employees from joining class actions.  The courts have specifically recognized the dangers of disinformation and coercion with respect to joining a class action that surround current employees.  *See EEOC v. Morgan Stanley & Co., Inc.,* 206 F. Supp.2d 559, 563 (S.D.N.Y. 2002) ("potential class members are at a distinct disadvantage when approached by the parties in this case").

Critically, a plaintiff need not show actual harm to justify limitations on a defendant's communications with putative class members—it is sufficient if a showing of ***potential*** harm is made.  *Burrell v. Crown Cent.*

*Petroleum,* 176 F.R.D. 239, 243 (E.D. Tex. 1997) )(where alleged class action has been filed, court may limit defendant's ex parte contact with class that is misleading or coercive).  The reason is that court understand that—as in this case—unlimited contacts by defendants with potential class members tend to undermine purposes of the rule governing the class-action process by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation.  *Id*.

In *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), the employer hatched a scheme to influence potential class members' decisions whether to participate.  The Eleventh Circuit declared:

> Unsupervised, unilateral communications with the Plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.  The damages from misstatements could well be irreparable.

*Id*.

Here, of course, the Plaintiff Class Members and potential opt-ins to the *Riddle* and *Zimmerman* collective actions remain current employees of SunTrust.  Courts recognize that "[c]oercion of potential class members by the class opponent may exist if both parties are 'involved in an on-going business relationship[.]'" *Morgan Stanley,* 206 F. Supp.2d at 562.  Further, "[c]ourts have found the danger of such coercion between employers and employees sufficient to warrant the imposition of restrictions regarding

communication between defendants and potential class members." *Id.*; *see Kleiner,* 751 F.2d at 1202.

Accordingly, when—as here—a collective action, or class action, has been filed but certification has not yet been granted, the Court may issue limitations on *ex parte* contact. *Id.* Such an order should be entered if—again, as in this case—it is clear that the defendant is attempting to engage in conduct that would undermine the rules governing communications in a class actions. *Id.*

Here, the problem—in a nutshell—is the Plaintiff Class Members may refuse to go forward with their claims believing ***inaccurately***, courtesy of SunTrust, that their FLSA rights have been forfeited under the Severance Agreement. SunTrust has done this by circumventing the Court and class counsel. The same is true of potential opt-ins in the *Riddle* and *Zimmerman* cases—who may withhold their consents believing ***inaccurately***, courtesy of SunTrust, that their FLSA rights have been forfeited under the Severance Agreement.

The Court should therefore immediately stop this process.

3.

Accordingly, SunTrust's severance offer is a back-door attempt to rid itself of the Plaintiff Class Members' pending overtime claims. Clearly,

however, SunTrust's proposal fails the FLSA's fairness test. The proper

remedy therefore is to order SunTrust to re-issuance all Severance

Agreements containing release language that carves-out the pending

overtime claims.

### E. Remedies Required to Fix the Impermissible Effects of Defendant's and Its Outside Counsel's Unlawful Conduct

1.

Courts routinely issue restraining orders after parties initiate improper

communications with class members. *See Haffer v. Temple Univ.*, 115 F.R.D.

506, 512 (E.D. Pa. 1987); *accord Hampton Hardware, Inc. v. Cotter & Co.*, 156

F.R.D. 630 (N.D. Tex. 1994). The protection of innocent class members must

be of paramount importance when a defendant engages in this type of

inappropriate conduct.

Remedies of the kind proposed in this case are exactly what courts in

similar situations have done. In *Belt v. Emcare, Inc.*, 299 F.Supp.2d 664

(E.D. Tex. 2003)—an FLSA collective overtime action—the named plaintiff

moved for an injunction to redress the misinformation and confusion caused

by the defendant-employer' unapproved letter to employees who had not yet

opted-in to case. The defendant's letter was designed to discourage

participation in the case and, thus, the opt-ins' exercise of their FLSA

overtime rights.

*Belt* granted the injunction against the defendant—and also against the defendant's outside counsel. *Id*. at 669-70. The court's order was designed to undo the harm caused by the defendant's campaign of disinformation and confusion. *Id*. *Belt* ordered the issuance of corrective notices, an additional 90 days for potential opt-ins to join the class, and reserved the right to allow putative class members to opt-in to the case post-verdict. *Id*.; *see Caserta,* 273 F.2d at 946 (holding an employee's express release waiving FLSA claims invalid because it had not been approved by the court).

Likewise, voiding releases has also been held appropriate as a means of undoing an employer's improper efforts to secure FLSA waivers from potential class members. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2001 WL 1403007, at *2 & *7 (N.D. Ill. Nov. 9, 2001) (voiding releases that the employer obtained from potential FLSA class members and ordering remedial notice sent to potential class members); *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346, 348 (N.D. Ill. 2001) (after employer offered employees additional compensation in exchange for an FLSA release, court enjoined defendant from soliciting further releases, declared the releases that had been signed void, and ordered corrective notice informing employees that they retain their right to sue under the FLSA).

2.

Accordingly, the plaintiffs have proven the likelihood of success on the merits.  The Plaintiff Class Members' pending overtime claims are protected activity under the FLSA; SunTrust's refusal to pay severance constitutes an adverse action by the employer; SunTrust's refusal is tied directly to the pending claims; and SunTrust is treating *potential* claimants completely differently—because they face no consequence related to their FLSA rights. *See Hilt,* 282 F.3d at 465; *Wolf*, 200 F.3d at 1343.  A temporary restraining order should therefore be entered imposing the conditions requested above.

DATED:  April 28, 2008.

Respectfully submitted,

 *s/Marc N. Garber*
ALAN H. GARBER
Georgia Bar No. 283840
MARC N. GARBER
Georgia Bar No. 283847
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Road, Suite 14
Marietta, Georgia 30068
678.560.6685 (phone)
678.560.5067 (facsimile)

DAN GETMAN – *Pro Hac Vice*
MATT DUNN
THE GETMAN LAW OFFICE
9 Paradies Lane
New Paltz, NY 12561
845.255.9370 (phone)
845.255.8649 (facsimile)

RYAN BARAK – *Pro Hac Vice*
KWALL, SHOWERS, COLEMAN &
 BARAK
133 North Fort Harrison Ave.
Clearwater, FL 33755
727.441.4947 (phone)
727.447.3158 (facsimile)

JASON GUNTER – *Pro Hac Vice*
WEBB, SCARMOZZINO & GUNTER
 P.A.
2121 W. 1st Street, Fl. 2
Fort Myers, FL 33901
239.334.1600 (phone)
239.334.7979 (facsimile)

**COUNSEL FOR PLAINTIFFS,
individually and on behalf of
others similarly situated**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 28, 2008, the foregoing pleading was served via the Court's electronic filing system on all counsel of record.

*s/Marc N. Garber*