UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIE ALLEN, individually and on behalf of all others similarly situated, ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. |
| v. ) ) | 1:06-CV-3075-RWS |
| SUNTRUST BANK, ) ) | |
| Defendant. ) ) | |

## PLAINTIFFS' MOTION TO APPROVE ATTORNEYS' FEES AND COSTS AND MEMORANDUM OF LAW IN SUPPORT OF MOTION

### I.      INTRODUCTION

Plaintiffs and SunTrust agreed to settle this federal Fair Labor Standards Act case. Plaintiffs seek the Court's approval (as part of the final approval of the Mediated Settlement) of reasonable costs, expenses and fees to plaintiffs' counsel. The parties agreed to a settlement to all plaintiffs for their FLSA claims, fees and costs.[1] All parties, and all opt-in plaintiffs, agreed that plaintiffs' counsel would

---

[1]   The specific terms of the mediated settlement are described in Exhibits 1 and 2 to the Parties' Joint Motion to Approve Collective Action Settlement and Memorandum of Law in Support of Motion ("Motion to Approve Settlement"), filed contemporaneously herewith.  As noted in the Motion to Approve Settlement, the Parties agreed that the specific settlement terms would be confidential and that the parties would seek leave to file all documents describing such settlement terms

receive one-third of the Total Settlement Amount. The Settlement, mediated through extensive arms length bargaining, is fair, reasonable and adequate. All Class Members were sent the Agreement of Terms for Mediated Settlement ("Settlement Agreement") and a Confidential Settlement Agreement and General Release.[2] The Confidential Settlement Agreement and General Release informed plaintiffs of their individual share of the Total Settlement Amount and that plaintiffs' counsel would be paid the Attorneys' Fees Amount and the Costs Amount.[3] Each individual will receive back pay and liquidated damages under the FLSA. Each plaintiff's claim is based on their self-reported overtime hours and is proportionate to the total claim. No one has objected to the fairness of the settlement or to the payment of fees and expenses to plaintiffs' counsel. And the named plaintiffs will receive a modest service payment for their representation and participation in the case.

   Defendant's payment of plaintiffs' costs and fees is consonant with the fee

---

under seal.  Accordingly, the Parties have filed a Joint Motion to File Confidential Exhibits Under Seal and have submitted Exhibits 1 and 2 to the Motion to Approve Settlement manually along with such Motion. The Total Settlement Amount is Set forth in Exhibit 1 to the Motion to Approve Settlement.

[2] Declaration of Matthew Dunn ("Dunn Decl."), ¶2.

[3] Agreement of Terms for Mediated Settlement, ¶5. The Agreement of Terms for Mediated Settlement has been submitted as Exhibit 2 to the Motion to Approve

shifting provision of the federal overtime law – the Fair Labor Standards Act, 29 USC § 216(b). Under the agreement, SunTrust agreed to pay the Attorneys' Fees Amount and the Costs Amount. The Costs Amount is deducted from the payout to plaintiffs pursuant to the contingency arrangement.

Plaintiffs' counsel achieved an excellent result for the hard-working computer support employees in this case, and under the settlement agreement are being paid modestly and appropriately for that success.

Plaintiffs' counsel, Getman & Sweeney, PLLC, The Garber Law Firm, Kwall, Showers & Barack, and Jason L. Gunter, P.A, have handled this case from its inception. During the investigation phase, since the litigation commenced in November 2006 in Florida, and December 2006 in Georgia, and through to the final payout, if this settlement is approved, counsel handled the case without payment of fees or costs. Like all FLSA cases that the firms take, plaintiffs' counsel assumes the risk that they will not be paid at all for their work  (for example if they lose the case, the law changes, or the defendant does not pay). Significant litigation expenses, office overhead and payroll carrying costs, are advanced. And other representation that could be paid up-front or on an as-billed

---

Settlement.  The Attorneys' Fees Amount and Costs Amount are set forth in Exhibit 1 to the Motion to Approve Settlement.

basis is foregone.

The fees are compensation for the work performed up to and including the Mediated Settlement, as well as any work required to document the Mediated Settlement, ensure that it is implemented, and obtain final resolution of the action, as well as to answer continuing questions for plaintiffs. Plaintiffs' counsel work includes: responding to SunTrust's motions including the motion to transfer, filing a collective action motion, conveying and explaining SunTrust's offers of judgment, maintaining contact with 41 individuals, answering plaintiffs' continuous questions about the case status, propounding discovery requests, answering SunTrust's discovery requests, resolving discovery disputes, reviewing thousands of pages of documents and electronic files, preparing for and taking a 30(b)(6) deposition, moving for a TRO and preliminary injunction, interviewing plaintiffs to calculate damages, litigating summary judgment motions, assessing the risks of trial, and mediation, and explaining the settlement to plaintiffs.

The fees sought are not excessive and indeed, at one-third of the Total Settlement Amount, they are significantly below the actual lodestar billings (less than 50 percent).[4] This award here is reasonable given the nature of the case, the risk of extensive and costly further litigation, and the uncertainty of success and

delay outweighing any potential recovery. This one-third contingency percentage is well within the range of permissible fees awarded in FLSA cases. They are also below the actual fees that plaintiffs and their counsel agreed upon (the lodestar).

Federal courts have made clear that "standstill agreements" are commonplace and proper.[5] Further, where as here, the total settlement fund includes Defendant's liability for fees under 29 U.S.C. §216, the fees cannot be strictly viewed as a deduction from plaintiffs' award, as is the case in a common fund.

## A.   ATTORNEYS.

### 1.  Getman & Sweeney, PLLC

Getman Sweeney is a five-lawyer, 5 paralegal, firm exclusively representing employees in wage and hour litigation around the United States. The firm carries a broad caseload of multi-state class and collective actions. Because employees are seldom in a financial position to pay legal fees prospectively, we typically do not charge our clients fees or costs up front, and we bear the risk of not being paid for

---

[4] Plaintiffs' counsel will receive less than half their actual lodestar billings.

[5] *See, e.g.*, *Malchman v. Davis*, 761 F.2d 893, 905 at n.5 (2d Cir. 1985)("But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the Settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."); see also,

our work if we are not successful, or if the defendant is unable to pay. Thus the firm bears the carrying costs of payroll and other overhead as well as litigation costs during the years that litigation takes to bring to a satisfactory conclusion. The firm's typical arrangement with clients, including those that joined this case, is that we represent them on a contingency basis, recovering one-third of the recovery or the hourly rate billings whichever is higher.

Plaintiffs' counsel, Dan Getman, is an experienced litigator representing plaintiffs in FLSA and state wage and hour matters. He has over 25 years in practice and has been litigating FLSA matters since 1989. Matt Dunn is a fifth year associate who did much of the firm's legal work on the case.

### 2. The Garber Law Firm

The vast majority of the firm's cases are also on behalf of low wage workers and others who cannot afford to assume the legal costs of asserting their federal rights. These representations are performed, as the current case, exclusively on a contingency basis. Plaintiffs' counsel from the Garber Law Firm – Alan Garber and Marc Garber – are experienced litigators whose practice is almost exclusively

---

*Bragg v. Bill Heard Chevrolet, Inc.-Plant City*, No. 8:02-CV-609-T-30 EAJ, 2007 WL 2781105, *5 (M.D.Fla.,2007)(approving $650,000 fee application).

in federal court representing plaintiffs in FLSA wage and hour matters and to a much lesser degree in Title VII cases.

*3.  Kwall, Showers & Barack, P.A.*

Ryan D. Barack is a partner is the firm of Kwall, Showers & Barack, P.A.  His practice focuses exclusively on labor and employment law matters, primarily representing employees.  In wage and hour disputes, representation is almost exclusively done on a contingency fee basis.

*4.  Jason Gunter, P.A*

Jason L. Gunter is a solo practitioner who almost exclusively represents employees on a contingency fee basis.  Many of the cases he handles involve FLSA overtime claims, which are all taken on a contingency fee basis, as was his agreement in the SunTrust case.

## II.    ARGUMENT

## PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS AS SET FORTH IN THE MEDIATED SETTLEMENT

Section 216(b) of the Fair Labor Standards Act (FLSA) provides that "the court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

of the action."[6] This language has been interpreted to mean that attorneys' fees

under FLSA are mandatory.[7]

## A.   PLAINTIFFS' PRIVATE CONTINGENCY AGREEMENT IS FAIR AND REASONABLE.

The law allows private contingency agreements to remain in full force

regardless of the award of a common fund fee. *See*, *Venegas v. Mitchell*, 495 U.S.

82, 89-90 (1990) (amount of § 1988 fee award against a losing defendant does not

invalidate or otherwise affect the enforceability of the contingent-fee agreement

between the prevailing plaintiff and his attorney).[8] Here, each plaintiff specifically

agreed to the one-third contingency arrangement. Both named plaintiffs agreed in

their individual retainers with plaintiffs' counsel. And each opt-in plaintiff agreed

when they signed the court approved consent to sue form.

## B.   THE SETTLEMENT IS FAIR

Under the terms of the Settlement, plaintiffs' counsel is receiving an

appropriate and agreed upon award. Through the Settlement, defendant agreed to a

so-called "stand-still" agreement concerning plaintiffs' attorneys' fees, *i.e.*,

---

[6] 29 USC §216(b).

[7] *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn.34 (1975).

[8] This settlement is not a common fund settlement. Each individual plaintiff agreed to the receipt a specified amount, and understood that attorneys' fees and costs would be a specified amount.

Defendant agreed to pay plaintiffs' attorneys' fees and costs in the Attorneys' Fee Amount. Federal courts have made clear that such commonplace agreements are proper.[9]

## C.    PLAINTIFFS ARE THE PREVAILING PARTY

In *Hensley v. Eckerhart*, the Supreme Court ruled that in fee shifting cases, plaintiffs are entitled to attorneys' fees, "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[10] Thus plaintiffs are not even required to prevail on all issues in order to be entitled to fees. The gravamen of plaintiffs' case was that defendant failed to pay overtime compensation at the rate of time and one-half as guaranteed by the FLSA.

Upon the Court's approval, plaintiffs will have secured a stipulated judgment calling for defendant to make back pay and liquidated damages payments in the Total Settlement Amount including costs and attorneys' fees. Plaintiffs are clearly

---

[9] *See, e.g., Malchman*, 761 F.2d at 905 n.5 (2d Cir. 1985)("But where, as here, the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."); *Bragg v. Bill Heard Chevrolet, Inc.- Plant City*, No. 8:02-CV-609-T-30EAJ, 2007 WL 2781105, *5 (M.D.Fla.,2007)(approving $650,000 fee application).

[10] 461 U.S. 424, 433 (1983); *see also Texas State Teachers v. Garland Indep. School Dist.*, 489 U.S. 782 (1989).

a prevailing party within the meaning of *Hensley*. Under *Hensley*, plaintiffs are a prevailing party entitled to a fully compensatory fee.[11]

Courts have repeatedly recognized the crucial importance of FLSA cases have to guaranteeing a basic living wage to the lowest wage earning working men and women and their families.[12] The United States Supreme Court has long recognized the crucial importance of the FLSA to the individual claimants and to society at large,

> The exploitation of a class of workers who are in an unequal position with respect to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being, but casts a direct burden for their support upon the community.

*West Coast Hotel v. Parrish*, 300 US 379, 399 (1937).

> The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Brooklyn Savings Bank v. O'Neil*, 324 US 697, 706 (1945).

---

[11] Time spent on preparing a fee petition is itself compensable. *Kennedy v. Avondale Estates, Georgia*, 2007 WL 842125, *4 (N.D. Ga. 2007)
[12] *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945).

10

In the present case, the relief obtained is clearly "substantial" within the meaning of *Hensley*.

## D.   PLAINTIFFS' FEES ARE REASONABLE

The Eleventh Circuit endorses the "lodestar" method to calculate attorneys' fees.[13] The lodestar is determined by multiplying a reasonable hourly rate by the hours reasonably expended and then accounting for other considerations that may require an enhancement or reduction of the fee.[14] The court may also consider other case-specific variables, the *Johnson factors*, identified by the Fifth Circuit.[15] The *Johnson* factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained;  (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

There is substantial duplication between the *Johnson* factors and the lodestar methodology. Plaintiffs will address all these factors below, considering the *Johnson* factors first and the lodestar after.  The agreed upon fee is presumptively reasonable because it has been agreed to by each and every plaintiff, each and

---

[13] *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)(per curiam).
[14] *See*, *Norman v. Hous. Auth.*, 836 F.2d 1292, 1302 (11th Cir.1988).

every individual who chose to opt-in, by defendant, and by class counsel. The fee also matches the one-third contingency retainer plaintiffs agreed to, which terms were already approved by the Court in the Notice which was approved on March 5, 2007.

### 1. Time and Labor Required

Plaintiffs submitted contemporaneous time records showing the number of hours spent litigating. And that time was reasonable. Plaintiffs' counsel successfully consolidated the *Palmer* case with the *Allen* case, received a collective action conditional certification, submitted and answered discovery, deposed a 30(b)(6) witness, argued for summary judgment, and protected plaintiffs from alleged retaliation by a successful TRO application. These steps secured a successful settlement in the Total Settlement Amount.

Plaintiffs' counsel also appropriately used staff resources. Although there were four teams of attorneys involved, consolidated litigation significantly reduced resources. One of the goals of the FLSA is to promote efficient and economical resolution of claims. Employees file collectively to pool resources, and reduce litigation costs.[16] Here, there were two pending cases: one in Georgia and another in Florida. Consistent with the FLSA, plaintiffs' counsel elected to work together

---

[15] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).
[16] *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

in an effort to combine resources. Thus avoiding two collective action notices, duplicative discovery, settlements, and multiple depositions.

Further, Getman & Sweeney, PLLC, which led many litigation components, proportionately divided the time between paralegals, associate attorneys, and the partners. Approximately one-quarter of the time is attributed to Mr. Getman, almost than one-third of the work was distributed to paralegals, and a little more than one-third of the time was distributed to associate attorneys. Therefore, Mr. Getman's time was spent on other cases, leaving associates and paralegals to perform vast majority of the work, and thus saving fees.

Although this case has been pending for over two years, four sets of counsel spent approximately 2,200 hours on the case. This number is low compared to other cases for scores of plaintiffs. For example, in another Title VII case, a firm spent nearly 4,000 hours on a case that resolved just prior to trial.[17] Unlike that case, plaintiffs' counsel here successfully mediated a settlement that avoided depositions of 41 plaintiffs, additional depositions of SunTrust, a decertification motion, and a trial. Instead, plaintiffs' counsel efficiently resolved the case and maximized plaintiffs' claims for all plaintiffs. And even if some of plaintiffs'

---

[17] *Rozell v. Ross-Holst*, No. 05 Civ. 2936(JGK)(JCF), 2008 WL 2229842, *2-3 (S.D.N.Y. 2008).

counsels' billings were deemed to be excessive, plaintiffs' counsel here reduced their fees by more than 50 percent.

Here, much of the time related to managing litigation on behalf of 41 plaintiffs with individual hours of work. There was substantial motion practice with extensive summary judgment briefing and a successful TRO application.

*2. The Novelty and Difficulty of the Questions*

Mediating a settlement that met the goals for plaintiffs and defendant proved difficult. There were significant unresolved legal issues such as fluctuating workweek questions that were presented, but not resolved on summary judgment.

*3. The Level of Skill Required to Perform the Legal Service Properly*

Defense counsel, Glenn Patton, is a partner at Alston & Bird, LLP and an experienced negotiator who has litigated employment cases. He is widely respected and recognized for his success in labor and employment law.[18] And he works for one of the country's best large law firms. Alston & Bird has approximately 900 attorneys. Litigating against defense counsel with a strong reputation and from a firm with limitless resources required significant skill, knowledge, and persistence.

---

[18] Exhibit 3.

#### *4. The Preclusion of Employment by the Attorney Due to Acceptance of the Case*

Dedication to this case precluded counsel from other work. Based on a 40-hour billable workweek, approximately 55 weeks of time was dedicated to the case (2200/40 = 55). During these 55 weeks, plaintiffs' counsel could have spent time working on other cases. Our firms rely heavily – indeed exclusively - on the receipt of attorneys' fees at the conclusion of a case. The risk of not receiving them is significant, and indeed plaintiffs' counsel here are receiving less than one-half of their normal billing rates despite excellent credentials.

#### *5. The Attorneys' Customary Hourly Rates*

<u>Getman & Sweeney</u>

The firm's hourly rates are our customary rates.[19] Clients agree to Dan Getman's, Michael J.D. Sweeney's, and the paralegals rates when they sign our retainers. They include:

- Dan Getman's customary rate is $500 per hour. He is the founding partner in the firm and a 1984 graduate of Yale Law School. Mr. Getman has been conducting complex litigation in federal court for more than 25 years, including 15 years with legal services organizations. He founded the firm in 1998, dedicated primarily to contingent representation of low-income workers with employment concerns. He has successfully litigated scores of

---

[19] *See*, *Rozell*, 2008 WL 2229842, *12 ("The first … factor is the range of rates that plaintiff's counsel actually charge their clients. This is obviously strong evidence of what the market will bear.)

federal and state wage and hour collective and class actions in this Court and many other courts around the country.[20]

- Michael Sweeney's customary rate is $375 per hour. He is a partner in the Firm, and he is a 1996 *cum laude* graduate of Fordham Law School. Before joining the firm in 2004, Mr. Sweeney clerked in District Court for the Southern District of New York, litigated with the law firm of Debevoise & Plimpton in New York City, and was on the faculty at Fordham Law School teaching civil procedure among other subjects. Throughout his legal career, he has engaged human rights issues both domestically and on an international level. In addition to his prior litigation experience, Mr. Sweeney has successfully litigated complex wage and hour cases in this and other federal courts while with Getman & Sweeney, PLLC.[21]

- Tara Bernstein's customary rate is $250 per hour. Ms. Bernstein is an associate in the Firm and a 2002 graduate of the University of Maryland Law School. She also received a Masters of Public Administration from Golden Gate University. She has been with the Getman & Sweeney, PLLC for more than 5 years litigating employment issues, including wage and hour cases, in federal court.[22]

- Matthew Dunn's customary rate is $250 per hour. Mr. Dunn is an associate in the Firm and a 2003 graduate from the Lewis and Clark Law School in Oregon. He is a member of the New York and Oregon bars and admitted to practice in the U.S. District Courts for the Southern, Eastern, and Northern Districts of New York. He has actively litigated wage and hour cases since joining the Getman & Sweeney, PLLC in January 2007, and has extensive prior litigation experience working for public defender offices in Oregon and New York[23]

---

[20] Getman Decl..

[21] Declaration of Michael J.D. Sweeney.

[22] See Ex. 4 attached to Getman Decl.. Tara Bernstein is on maternity leave and unable to sign her declaration. Therefore her qualifications are attached to Dan Getman's declaration.

[23] Dunn Decl..

- Our customary rate for paralegal work is $125 per hours. Several paralegals work for the Firm. Their qualifications are attached to Mr. Getman's declaration and are available at www.getmansweeney.com.[24]

The Garber Law Firm

- Alan Garber's customary rate is $375 per hour. He is the founding partner in the firm and a 1994 graduate of Rutgers Law School-Newark where he was a member of the *Rutgers Law Review*, after which he clerked for U.S. District Judge Sharon Lovelace Blackburn in the Northern District of Alabama. Mr. Garber has been conducting complex litigation in federal court for almost 15 years, including a combined 7 years with Sutherland Asbill & Brennan in Atlanta and Gordon Silberman Wiggins & Childs in Birmingham, Alabama. He founded the firm in 2001, dedicated primarily to contingent representation of low-income workers with employment concerns. He has successfully litigated scores of federal employment and wage and hour cases, including class action and collective action cases, in this Court and other courts in the Southeast.[25]

- Marc Garber's customary rate is $500 per hour. He is a 1985 *cum laude* graduate of the University at Buffalo Law School, after which he clerked for U.S. District Judge Jerry Buchmeyer in the Northern District of Texas. Mr. Garber has been conducting complex criminal and civil litigation in federal court for more than 23 years, including 9 years as an Assistant United States Attorney specializing in bank fraud and health-care fraud prosecutions involving losses ranging up to $140 million dollars, 7 years with Gibson Dunn & Crutcher and Alston & Bird, in addition to his time at the Garber Law Firm, P.C. His practice is dedicated to contingent representation of low income workers with employment concerns and to complex criminal cases involving economic crimes. He has successfully tried more than a dozen criminal fraud trials, and litigated federal employment and wage and hour cases, including class action and collective action cases, in this Court and other courts in the Southeast.[26]

---

[24] *See* Ex. 5 attached to Getman Decl.
[25] Declaration of Alan Garber.
[26] Declaration of Marc Garber.

<u>Kwall, Showers & Barack, P.A.</u>

- Ryan D. Barack's regular hourly rate is $350 per hour.  Ryan Barack is a shareholder in the Tampa Bay, Florida law firm of Kwall, Showers, & Barack, P.A. Mr. Barack is Board Certified in Labor and Employment Law by The Florida Bar. Certification is the highest level of recognition by The Florida Bar of the competency and experience of attorneys.  Mr. Barack is a Member of The Florida Bar and the Pennsylvania Bar, where his current status is active but residing out-of-state.  He is also a Member of the Bar of the United States Supreme Court; a Member of the Bar of the Eleventh Circuit Court of Appeals; a Member of the Bars for the Northern, Middle, and Southern Districts of the United States District Courts of Florida; a Member of the Labor and Employment Law Section of The Florida Bar, the American Bar Association, and the Hillsborough County Bar Association; a Member of the Florida Chapter of the National Employment Lawyers Association; a Member of the Hillsborough County Bar Association; and a Member of the Clearwater Bar Association.

  Mr. Barack is the past Chair of the Federal Court Practice Committee of The Florida Bar.  He also serves on the Labor and Employment Law Certification Committee of The Florida Bar.  He also previously served a two-year term as Co-Chair of the Labor and Employment Section of the Hillsborough County Bar Association.  He has published and lectured extensively on labor and employment law topics and have made numerous presentations and delivered workshops to both attorney and non-lawyer groups.

  Mr. Barack attended law school at the Marshall-Wythe School of Law at College of William and Mary, where he was a member of the <u>William and Mary Law Review</u>.  He attended law school on a Graduate Research Fellowship.  He received his undergraduate education at Vanderbilt University where I had majors in political science and secondary education.

  Mr. Barack has actively litigated numerous FLSA cases during his practice.[27]

---

[27] Declaration of Ryan Barack

<u>Jason Gunter, P.A</u>

- Jason L. Gunter's hourly rate for FLSA overtime cases is $375 per hour.  He has been practicing law for 10 years.  Mr. Gunter is a Board Certified Labor & Employment Lawyer  (certified by the Florida Bar).  He graduated *magna cum laude* from Nova Southeastern University Law School in 1997.  Mr. Gunter has actively litigated many FLSA overtime cases during his years of practice.[28]

*6. Whether the Fee is Fixed or Contingent*

The fees in this case were contingent and thus normally an additional fee is required to compensate counsel for the risk of non-payment. The FLSA violating defendant agreed to pay attorneys' fees and costs, but in an amount roughly one-half plaintiffs' counsels' normal rates. Willie Allen and Robert Palmer approved the attorneys' fees and costs when they approved the settlement agreement. And each opt-in class member was informed of and agreed to fees and costs on the same basic terms.[29] At the time each opt-in plaintiff joined the case, he or she agreed that plaintiffs' counsel would receive one-third of the gross settlement or the amount that was received by the defendant, whichever was greater in the Consent to Sue.[30]

*7. The Time Limitations Imposed by the Client or the Circumstances*

There were no time limitations imposed by the client or the circumstances.

---

[28] Declaration of Jason Gunter.
[29] Dunn Decl., ¶2; Confidential Settlement Agreement and General Release, ¶2.

*8. The Amount Involved in the Case and the Results Obtained*

The 41 participating plaintiffs will share the Final Net Settlement Amount.[31] The total value of the case is the Total Settlement Amount. And as described above each plaintiff will receive a settlement based on his or her self-reported hours. The named plaintiffs will receive an additional Service Payment Amount for their active participation in the case.[32] This is a fine settlement for all parties. Plaintiffs' counsel, consistent with the FLSA's mandate and policy, used the opt-in mechanism to reduce attorneys' fees.

*9. The Experience, Reputation, and the Attorneys' Ability*

As explained in the fifth factor above (The Attorneys' Customary Hourly Rates), the attorneys are well qualified and have significant wage and hour experience. Plaintiffs' attorneys have represented plaintiffs in class and collective actions in scores of federal and state wage and hour cases. A fuller statement of these qualifications can be found in the Declarations attached to this brief.

---

[30] *See e.g.*, Consent to be Party Plaintiff, Kenneth David Kelley, Doc. 57-4.

[31]  The Final Net Settlement Amount is set forth in Exhibit 1 to the Motion to Approve Settlement. The pro rata share of the opt-out plaintiff will revert back to SunTrust.

[32]  The Service Payment Amount is set forth in Exhibit 1 to the Motion to Approve Settlement.

*10. The "Undesirability" of the Case*

Wage and hour cases are risky because they depend on the plaintiffs prevailing. Plaintiffs in the present case were represented without payment of any guaranteed fee, with the understanding that attorneys' fees would be available either as a one-third contingency, or by statute, but either way, only if plaintiff prevailed. Thus plaintiffs' counsel bore the risk of non-payment for significant periods of work expended over the past two years. Plaintiffs' counsel also bore the risk of an insolvent defendant, change in the law, plaintiffs' withdrawing or dying, appeals, delays, etc. Further, counsel advanced costs. There are significant carrying costs for an office making payroll and working for years without receiving money for their work.  This litigation was handled entirely on a contingent basis, with no up-front retainer fees or expenses.

*11. The Nature and Length of the Professional Relationship With the Client*

Plaintiffs' relationship with counsel has lasted over two years. There is no prior relationship or representation. Because plaintiffs' counsel mainly represent plaintiffs who are not properly paid overtime under the FLSA or state wage and hour law, representation is usually limited to one case.

*12. Awards in Similar Cases*

Class counsel's rates are lower than the market rate, rates that clients are willing to pay. For instance, attorneys for Outten & Golden, another firm concentrating in

litigating wage and hour cases in the Southern and Eastern Districts of New York, charge rates higher than Getman & Sweeney, PLLC, law firms for similar experience.[33] For example, in *Rozell v. Ross-Holst*, the Court approved hourly rates of $600 to Outten and Golden lawyers with similar experience to Mr. Getman for litigating what it characterized as a "relatively straightforward" Title VII case.  It also awarded hourly rates of $350 for associates with five years, less experience than Mr. Dunn.[34]

Similarly, an Atlanta based Alston & Bird partner, who graduated in 1977, charged a standard hourly rate of $580 in 2008. And in *Topp, Inc.*, *v. Uniden America Corporation*[35], he requested and received a rate of $551.00 per hour. The reduction was based on a client discount. Another Alston & Bird partner located in New York charged an hourly rate of $585 per hour in 2006 and the associate charged $350.00 per hour.[36] The Court approved the partner's hourly rate and reduced the associate's hourly rate to $297.50 while she was a third year associate.

---

[33] *Rozell*, 2008 WL 2229842, *13 (S.D.N.Y. 2008)(Rates charged both other attorneys can be evidence of reasonableness).
[34] *Rozell*,  2008 WL 2229842, *14 ( Title VII claims); *Silberblatt v. Morgan Stanley*, 524 F.Supp.2d 425, 434 (S.D.N.Y. 2007)(breach of contract and deceptive trade practices).
[35] *Topp, Inc. v. Uniden America* Corp, 05-21698-Civ, 2007 WL 2155604, *3 (S.D.Fl. July 25, 2007); Ex. 6, Decl of Frank G. Smith, Esq..
[36] Ex. 7, Declaration of Robert E. Hanlon in *Margel et al. v. E.G.L. Gem Lab Ltd.*, 04-cv-1514(PAC)(HP)(Doc. 105, filed June 11, 2008, SDNY); *Margel et al. v. E.G.L. Gem Lab Ltd.*, 04-cv-1514, 2009 WL 302069, *8 (SDNY 2009).

As further evidence of the reasonableness of plaintiffs' counsel's rates, defense counsel Glenn Patton's hourly rate in 2007 was $370.  And Alicia Starkman's hourly rate was $220 per hour. At the time Glenn Patton had ten years of experience and Alicia Starkman was a third year associate.[37] With respect to paralegal rates, a District Court in the Middle District of Georgia approved a paralegal's hourly rate of $136[38] and this District approved paralegal fees in the amount of $150 per hour for a paralegal with fifteen years experience.[39]

   Plaintiffs' counsel rates are comparable to rates approved in this jurisdiction. For example, in *Kenny A. ex rel. Winn v. Perdue*[40], in 2006 this District approved attorneys' fees in the amount of: a) $495 per hour for an attorney with 35 years experience; b) $360 per hour for an attorney with 19 years experience; c) $225 per hour for an attorney with four years experience; d) $240 per hour for an attorney with five years experience; and e) $290 per hour for an attorney with 11 years

---

[37] Ex. 8, Affidavit of Glenn G. Patton in *Furgess, Jr., v. United Parcel Service, Inc.*, No. 3:05-1206-CMC (D.S.C. Filed Feb. 13, 2007)(Doc. 68-4).

[38] *Hall v. Government Employees Ins. Co.*, 5:07-cv-332(HL), 2008 WL 2704595 (M.D. Ga. 2008)(approving paralegal's hourly rate of $136/hour); *Barari v. City of Byron*, No. 5:04CV46(DF), 2006 WL 42140, *2 (M.D. Ga. 2006)(approving $85/hour for paralegal time in 2006); *Sanchez v. Ocwen Loan Servicing, LLC*, 2009 WL 464266 (MD Fla. 2009)(approving $105/hour for paralegal time); *VP Gables, LLC v. The Cobalt Group, Inc.*, --- F.Supp.2d---, 2009 WL 199145 (S.D. Fla. 2009)(approving $100/hour for paralegal time).

[39] Declaration of Jeffrey O. Bramlett, at ¶7(g), 02-cv-1686-MHS (N.D. Ga., filed Dec. 9, 2005).

[40] 454 F.Supp.2d 1260 (N.D. Ga. 2006)

experience. A respected attorney provided a declaration stating that those rates were low.[41] In approving the rates, the Court agreed with the attorney's opinion.

Similarly, the Laffey Matrix, which is used in federal courts to determine rates in Washington D.C. and Baltimore area,[42] finds applicable hourly rates in the area to be $671 for lawyers who graduated 20 or more years ago, $557 for lawyers who graduated between 11 and 19 years ago, $342 for lawyers who graduated between four and seven ago, and $152 for paralegals.[43]

### 13. Plaintiffs' Attorneys' Hourly Rates Are Reasonable Under the Lodestar Method

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"[44]

> The applicant attorney's customary billing rate for fee-paying clients ordinarily is the best evidence of the market rate, although that information is not necessarily conclusive. A fee applicant may also provide opinion evidence of reasonable rates, which is usually done by submitting affidavits of other attorneys in the relevant legal community. Finally, the Court may use its own personal experience and expertise to assess the lawyering skills exhibited in the case.[45]

---

[41] Ex. 9, Declaration of John A. Chandler, ¶6, Case No. 1:02-cv-01686-MHS (Doc. 495-8, filed Dec. 9, 2005)(N.D. Ga).

[42] *Salazar v. District of Columbia*, 123 F.Supp.2d 8, 13 -14 (D.D.C.,2000)

[43] Ex. 10, www.laffeymatrix.com (last visited September 17, 2008).

[44] *Norman v. Hous. Auth.,* 836 F.2d 1292, 1299 (11th Cir. 1988)

[45] *Kenny A. ex rel. Winn v. Perdue*, 454 F.Supp.2d 1260, 1284 (N.D. Ga. 2006) citing *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir.2000), *Duckworth v. Whisenant*, 97 F.3d 1393, 1396-97 (11th Cir. 1996).

As explained above Plaintiffs' counsels' experience, comparable fees by comparable counsel, defense counsel's rates, and reputation the hourly rates are reasonable.

## E.    PLAINTIFFS' HOURS WORKED ARE REASONABLE

As described above, plaintiffs' counsel appropriately distributed the work between the partners, associate attorneys, and paralegals. In addition, a reasonable amount of time was spent working to settle the case over the past two years, including serving discovery demands, filing a successful collective action motion, deposing a 30(b)(6) witness, and litigating summary judgment.   The Total Value of Plaintiffs' Attorney Hours are set forth in Exhibit 1 to the parties' Joint Motion to Approve Settlement, filed contemporaneously herewith. As demonstrated therein, the Total Fee Amount is approximately 50% of the Total Value of Plaintiffs' Attorney Hours.  Plaintiffs' counsel agreed to this reduction in order to further the resolution of this case.

## F.    COSTS

Defendant agreed to pay plaintiffs' costs, including "such out-of-pockets costs shall include general costs, travel, hotel accommodations, meals, copying charges, long distance telephone charges, facsimile charges, and ECF charges."  Under the

FLSA, costs include such reasonable out-of-pocket expenses.[46] Under the FLSA,

compensable costs include items well beyond those normally allowed under

Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920.[47] Indeed, travel and even meal expenses

may be reimbursed.[48] Plaintiffs' counsel advanced costs. Costs are separately

payable by defense counsel in FLSA cases.

   The full set of invoices and documentation for various costs is set forth as

Exhibit 14 for Getman & Sweeney, the attachment to Ryan Barack's Declaration,

for Kwall, Showers & Barack, and Exhibit B for Jason L. Gunter, P.A.. The total

costs that Plaintiffs seek reimbursement for are in Exhibit 1.

### III.   CONCLUSION

   Plaintiff respectfully requests that the Court grant approval of the Settlement

and issue an Order: granting final approval of the Settlement and approving the

payment of plaintiffs' attorneys' fees and expenses in the Attorneys' Fees Amount

---

[46] *Shorter v. Valley Bank & Trust Co.*, 678 F.Supp. 714, 726 (N.D.Ill.1988).

[47] *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir.1988), cert. denied, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989) (holding that FLSA's costs provision authorizes an award of costs as part of a "reasonable attorney's fee," which would not be authorized under Rule 54 or 28 U.S.C. § 1920); *Colunga v. Young*, 722 F.Supp. 1479, 1488 (W.D.Mich.1989), *aff'd* 914 F.2d 255 (6th Cir.1990) (holding that, while travel and telephone costs are not recoverable under Rule 54 or 28 U.S.C. § 1920, they are recoverable under "the remedial and thus more broadly interpreted cost-shifting aspect" of FLSA).

[48] *Calderon v. Witvoet,* 112 F.3d 275 (7th Cir. 1997).

as set forth in the Settlement. The amount sought is fair and should be approved as

part of the final settlement herein

Dated: May 27, 2009                            Respectfully Submitted,

                                               s/ Dan Getman
                                               Pro Hac Vice
                                               GETMAN & SWEENEY, PLLC
                                               9 Paradies Lane
                                               New Paltz, NY  12561
                                               (845) 255-9370
                                               (845) 255-8649 (facsimile)
                                               dgetman@getmanlaw.com

                                               Alan H. Garber
                                               Georgia Bar No. 283840
                                               Marc Garber
                                               Georgia Bar No. 283847
                                               THE GARBER LAW FIRM, P.C.
                                               Suite 14, 4994 Lower Roswell Road
                                               Marietta, GA  30068
                                               (678) 560-6685
                                               (678) 560-5067 (facsimile)
                                               ahgarber@garberlaw.net
                                               mngarber@garberlaw.net

                                               Ryan Barak - Pro Hac Vice
                                               KWALL, SHOWERS, & BARAK
                                               133 North Fort Harrison Ave.
                                               Clearwater, FL 33755
                                               (727) 441-4947
                                               (727) 447-3158 (facsimile)
                                               rbarak@kscblaw.com

                                               Jason L. Gunter – Pro Hac Vice
                                               JASON L. GUNTER, P.A.
                                               1625 Hendry Street
                                               Suite 103

Ft. Myers, Florida 33901
(239) 334-7017
(239) 334-6662
jason@gunterfirm.com

ATTORNEYS FOR PLAINTIFFS